## LIPPENCOTT v. ALLANDER et al.

Ferry: FRANCHISE: EFFECT OF DEATH OF GRANTEE. A ferry license is not vacated nor the franchise lost by the death of the party to whom it was granted, but passes to his representatives.

*Appeal from the General Term, Second District, Van Buren District Court.*

WEDNESDAY, OCTOBER 6.

A LICENSE was issued to A. J. Kerr, by the supervisors of Van Buren county, authorizing him to keep a ferry across the Des Moines river, between Bentonsport and

Vernon. The plaintiff and others made application to the board of supervisors to vacate the license, because of various acts of those operating the ferry alleged to be in violation of their duty as ferrymen, and because of the death of Kerr, to whom the license was issued. The District Court held that the death of Kerr vacated the license; the General Term affirmed this decision. Defendants appeal.

The same parties have been twice heretofore in this court in cases growing out of this same ferry. See 23 Iowa 536, and 25 id. 445.

*Francis Semple* for the appellants.

*J. C. Knapp* and *Bertrand Jones* for the appellee.

BECK, J. — But one question is presented by the record for our determination ; it is this : Is a ferry license vacated or the franchise lost by the death of the party to whom it was granted ?

The right acquired under a ferry license is called a franchise, and is conferred by grant from the government, and with an implied covenant, on the part of the government, not to invade the right vested, and, on the part of the grantee, to perform the duties and conditions prescribed by the grant. 3 Kent's Com. 458. This franchise is included in the general denomination of incorporeal hereditaments, a term used to distinguish one of the different kinds of things real. It partakes of a double nature and character. So far as it affects or concerns the public it is *publici juris*, and is subject to governmental control. The legislature may prescribe the manner of granting it, to whom it may be granted, the conditions and terms upon which it may be held, and the duty of the grantee to the public in exercising it, and also provide for its forfeiture upon the failure of the grantee to

perform that duty. But when granted it becomes the property of the grantee and is a private right subject only to the governmental control growing out of its other nature of *publici juris*. *Benson* v. *Mayor of New York*, 10 Barb. (S. C.) 223. In this character and nature it is essentially in all respects property, and is governed by the same rules as to its enjoyment and protection, and regarded by the law, precisely, as other property *Conway* v. *Taylor's Ex'r*, 1 Black. 632 ; *Bowman's Devisee* v. *Wathan*, 2 McLean, 376; *Dundy* v. *Chambers*, 23 Ill. 370 ; 3 Kent's Com. 458.

The fact that it is conferred by grant from the government, and may be forfeited by mis-user or non-user, does not argue that it is not property, or that it may be lost in a way or manner which will not deprive the owner of other property of his rights therein.

Under the provisions of our statute, ferry licenses are granted by the board of supervisors of the county for a limited time, and to such persons as, in the opinion of the board, will best serve the public interest, preference being given to the owner of the land or of a previous ferry. Conditions and terms may be imposed by the board as prescribed by the statute, and for the violation thereof the license may be revoked. No restriction is imposed upon the sale or transfer of the franchise, and there is no provision that, upon the death of the party to whom the license was issued, it shall be vacated and the franchise lost.

It may be sold upon execution as real property, except that the purchaser may take immediate possession of all property ordinarily used in the exercise of the franchise, which, it is provided, is transferred by the sale. The purchaser at once enters upon the exercise of the franchise. It is exposed to sale differently from other property; he who will take the franchise for the shortest time, within

the period for which the license was issued, in satisfaction of the execution, shall be considered the highest bidder. Rev. chap. 54. Nothing is found in this chapter or in other statutes taking from this franchise the character of property possessed by all other things over which men exercise dominion and ownership. The peculiar provision regulating the manner of its sale upon execution is designed to secure the continuance of the ferry for the public convenience, notwithstanding the transfer of the franchise thereby. No argument can be drawn from this provision in support of the decision of the court below.

It is argued that the grant of the franchise is made in view of the fitness and qualifications of the grantee and involves a personal trust which cannot be assumed and exercised in case of his death by his representatives, because they may be unfit and unqualified therefor. Hence it is thought the death of the grantee terminates the franchise. The answer to this is that, if the person exercising the franchise fails to perform the duties appertaining thereto, the license, by proper proceedings, may be revoked. Rev. § 1212. And that this position of appellee is not in accordance with the policy of our statutes is made very plain, by the provisions permitting and regulating the sales of the franchise upon execution. In such case the purchaser, by substitution, assumes the duties of the original grantee, and acquires all his rights. No reason can be given why the law will permit this, and yet prohibit the exercise of the franchise, in case of the death of the grantee, by his representatives. The doctrine contended for leads to another inconsistency, namely : the franchise may be subjected to the payment of the debts of the grantee in his life-time, but is not assets for the payment of the same debts after his death.

The grant of a ferry franchise is made for a specified time, not less than three nor more than ten years, with

no reservation that it shall terminate upon the death of the grantee. Being, as we have seen, property it would not, upon every analogy of the law, be lost by the death of the grantee. At common law it was granted as other real property in estates for years, for life or in perpetuity, and was so held. Under our statute it is granted in an estate for years only, and the death of the grantee can no more terminate it than the death of a tenant can terminate a like estate in lands.

The above hardship and injustice of the rule contended for support a powerful argument against it. These franchises often require great outlays for boats, improvement of roads, etc., in order to render them remunerative to the owners and useful to the public. The property thus acquired is valuable only in connection with the franchises, and if they are forfeited by the death of the grantees, great loss and gross injustice would thus be wrought their estates.

The doctrine contended for by defendant's counsel is not supported by the authorities they cite, viz., *Munroe* v. *Thomas*, 5 Cal. 470, and *Thomas* v. *Armstrong*, 7 id. 286. These cases hold that ferry franchises are not the subjects of levy and sale under execution. The decisions appear to be based upon the grounds that a ferry franchise " involves a personal trust granted by the sovereign, upon conditions imposed upon the grantee alone, and his liability cannot be removed by substitution." Such sales, as we have seen, are recognized by our statutes, and the ground of these decisions seems to be unsupported by reason and principles of law. The other authority cited (*Bowman* v. *Wathin*, 1 Howard, 189) does not appear applicable to the question involved in this case.

Reversed.